UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



PATRICK THEO SHAVAR JOHNSON,

    Petitioner,

v.

WILLIAM P. BARR, et al.,

    Defendants.

19-CV-693
Decision & Order

Patrick Theo Shavar Johnson has been detained in United States Immigration and Customs Enforcement custody since February 23, 2018—nearly 21 months. Docket Item 7-3 at 77. On May 28, 2019, Johnson filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York. Docket Item 1. On September 9, 2019, the respondents answered the petition, Docket Items 7, 8; and on September 25, 2019, Johnson replied, Docket Item 9.

For the reasons that follow, this Court grants Johnson's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS").

Johnson is a native and citizen of Jamaica. *See* Docket Item 1 at 1; Docket Item 7-3 at 4. He was admitted to the United States as a lawful permanent resident on February 20, 2011. Docket Item 1 at 1; Docket Item 7-3 at 4.

On March 7, 2017, Johnson pleaded guilty in New York State Supreme Court, Bronx County, to possession of a controlled substance in the third degree, and he was sentenced to a two-year term of incarceration. Docket Item 7-3 at 4, 16, 39. On March 9, 2018, Johnson pleaded guilty in the same court to possession of a weapon in the fourth degree and attempted possession of a loaded firearm, and he was sentenced to a one-year term of incarceration for the first offense and a sixty-day term of incarceration for the second offense, both to run concurrently. *Id.* at 4, 11, 23, 41-42.

On October 5, 2017, DHS lodged an immigration detainer with the New York State Department of Corrections and Community Supervision ("DOCCS"), asserting that DHS had "probable cause to believe that [Johnson was] removable from the United States." *Id.* at 51. DHS asked DOCCS to "[m]aintain custody of [Johnson] for a period [not to exceed 48 hours]" after completion of his sentence of incarceration so that DHS could assume custody of him. *Id.* at 53. On October 18, 2017, DHS served Johnson with a "Notice to Appear," charging that he was subject to removal from the United States: under 8 U.S.C. §§ 1101(a)(43)(A) and 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony; under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a controlled substance offense; and under 8 U.S.C. § 1227(a)(2)(C) for having been convicted of an offense involving firearms. *See id.* at 2-5, 77.

On February 16, 2018, DHS issued a "Notice of Custody Determination," informing Johnson that he would be detained by DHS "pending a final administrative determination in [his] case." *Id.* at 55. A week later, DHS took Johnson into custody upon completion of his sentence with DOCCS. *Id.* at 77.

On April 3, 2018, through counsel, Johnson asked to adjourn his removal hearing. Counsel explained that Johnson had appealed his criminal convictions and that he intended to apply for asylum and withholding of removal. *Id.* at 64. The immigration judge ("IJ") adjourned the proceedings until June 18, 2018, and set an asylum application deadline for April 17, 2018. *Id.* at 64-65. That deadline passed without Johnson's filing an application. *Id.*

On May 8, 2018, Johnson's attorney moved to withdraw, and the IJ granted that motion on May 23, 2018. *Id.* On June 11, 2018, a new attorney filed a notice of appearance and requested further adjournment of the scheduled removal hearing. *Id.* The IJ granted the request. *Id.* On July 26, 2018, Johnson applied for asylum and withholding of removal. *Id.* He also requested another adjournment, based on an order of the New York Supreme Court, Appellate Division, dated July 21, 2018, granting his request for an extension of time to appeal his convictions. *Id.*

On August 9, 2018, the IJ ordered Johnson removed to Jamaica based on his status as an aggravated felon. *Id.* at 57, 60. In reaching this determination, the IJ found that Johnson had abandoned his claims for asylum and withholding of removal because his July 28, 2018 application was "untimely." *Id.* at 59. On September 12, 2018, DHS asked the Embassy of Jamaica to issue travel documents to facilitate DHS's removal of Johnson. *Id.* at 61-62.

Johnson subsequently filed an administrative appeal challenging the IJ's determination. The Board of Immigration Appeals ("BIA") denied his appeal on January 24, 2019. *Id.* at 64-68. DHS again requested travel documents from the Jamaican Embassy on January 25, 2019. *Id.* at 70-71. On February 14, 2019, Johnson filed a

petition for review of the BIA's decision with the Second Circuit Court of Appeals. *See* Docket Item 7-2 at 6.

On February 22, 2019, DHS served Johnson with a Form I-229(a): "Warning for Failure to Depart" in which it requested Johnson's assistance in securing travel documents. Docket Item 7-3 at 72-74. On February 27, 2019, Johnson filed an emergency motion in the Second Circuit to stay his removal. *See* Docket Item 7-2 at 6.

On April 19, 2019, DHS notified Johnson that, after a review of his case file, it had determined that his continued detention was necessary because he posed a threat to public safety and a flight risk. Docket Item 7-3 at 77-78. On July 23, 2019, DHS interviewed Johnson regarding his ongoing detention. Johnson bore the burden of "demonstrating to the satisfaction of the Attorney General that [he] [**did**] **not** pose a danger to the community and [**did**] **not** present a flight risk." *Id.* at 80 (emphasis in original). On August 5, 2019, DHS notified Johnson that after a second review of his case and an in-person interview, it again determined that continued detention was necessary. *Id.* at 85, 87.

On June 11, 2019, the Jamaican Embassy issued travel documents enabling DHS to remove Johnson to Jamaica on a flight scheduled for June 27, 2019. *Id.* at 76. DHS did not pursue this option, however, because of its "forbearance policy" with the Second Circuit. *Id.* at 77, 85. Johnson remains in DHS custody at the Buffalo Federal Detention Facility awaiting the Second Circuit's decision. Docket Item 7-2 at 8. He has been in DHS custody for nearly 21 months.

## DISCUSSION

### I. HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Johnson is validly detained under 8 U.S.C. § 1231 as a noncitizen subject to a final order of removal. Docket Item 7 at 1.

Johnson disagrees on three grounds. First, he contends that his detention "for over six months" is "illegal[ ]" because the government has not demonstrated the likelihood of his removal to Jamaica in the "reasonably foreseeable future." Docket Item 1 at 6. The Court construes Johnson's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."[1] *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Second, Johnson argues that his "prolonged" detention violates his right to substantive due process under the Fifth Amendment of the United States Constitution. Docket Item 1 at 7. And third, he argues that his "prolonged" detention "without a meaningful review" violates his right to "[p]rocedural [d]ue [p]rocess under the Fifth Amendment of the United States Constitution." *Id.*

---

[1] Because Johnson is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

5

## II. STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Johnson's detention in order to evaluate his first challenge, alleging that his continued detention violates 8 U.S.C. § 1231. The government and Johnson seem to agree that Johnson's detention is governed by 8 U.S.C. § 1231(a). See Docket Item 1 at 6; Docket Item 7 at 1. But this Court disagrees and finds that Johnson's detention is governed by 8 U.S.C. § 1226(c).

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable." Hechavarria v. Sessions, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation." Id. at 53. "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" Id. at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

Id. at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Johnson has filed a petition for review of the BIA's decision and a motion to stay his removal with the Second Circuit. See Docket Item 7-2 at 6. Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove an alien who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the alien's stay

6

motion is otherwise denied." *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019). This Court accordingly has held that until a Second Circuit panel rules on an immigrant's request for a stay of his removal, the "forbearance agreement amounts to a court ordered stay of the removal of the alien." *See Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at *4. In other words, this Court construes the forbearance agreement as effectively rendering Johnson's removal status to be governed by 8 U.S.C. § 1231(a)(1)(B)(ii).

Therefore, Johnson is detained under section 1226. Specifically, Johnson is detained under section 1226(c), which "states that the Attorney General 'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) (quoting 8 U.S.C. § 1226(c)(1)). Because Johnson is not detained under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

### III. DUE PROCESS

Johnson also alleges that his continued detention violates the Due Process Clause. The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *Id.* (citations omitted). "When government action

7

depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens."

8

*Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A. Substantive Due Process

Johnson argues that his detention violates his right to substantive due process. Docket Item 1 at 7. He has been in DHS custody since February 23, 2018—nearly 21 months. But this Court cannot say that detention that long violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749. Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B. Procedural Due Process

Johnson also challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 7. The Due Process Clause is not offended by the mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings." *Demore*, 538 U.S. at 513 (emphasis added). But "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring).

9

"In light of the substantial uncertainty surrounding the detention provisions in [s]ection 1226(c)," *Hechavarria*, 891 F.3d at 58, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry," *Hemans*, 2019 WL 955353, at *5. "A[t] the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### C.     Johnson's Detention

"The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (cited in *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018)). "[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Johnson has been in DHS custody since February 23, 2018—nearly 21 months. "As detention

10

continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein). In fact, courts have found detention shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[2]

In *Demore*, in upholding the constitutionality of detention under section 1226(c), the Supreme Court relied on the fact that there was a "very limited time of . . . detention at stake," noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which aliens are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)). Johnson's 21-month detention far exceeds the four-month average cited in *Demore*.

The length of Johnson's detention therefore supports his argument that his detention without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal

---

[2] *See, e.g., Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

11

detention" factors into the reasonableness of Johnson's detention. *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5. Neither party has supplied this Court with any information about the conditions that Johnson faces at the Buffalo Federal Detention Facility. This Court therefore cannot address that factor.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when an alien has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id.*

12

Here, DHS took Johnson into custody on February 23, 2018, following completion of his state incarceration. Docket Item 7-3 at 77. Johnson filed at least two motions to adjourn his removal hearing, which eventually was held on August 9, 2018. *Id.* at 64. At that hearing, the IJ ordered Johnson removed to Jamaica based on his conviction for an aggravated felony. *Id.* at 57, 60. Johnson appealed that decision on September 10, 2018, and the BIA denied his appeal on January 24, 2019. *Id.* at 64-68, 77. DHS requested travel documents from the Jamaican Embassy the next day,. *Id.* at 70-71. On February 14, 2019, Johnson petitioned the Second Circuit for review of the BIA's decision, see Docket Item 7-2 at 6, and on February 27, 2019, Johnson filed an emergency motion for a stay of removal with that same court. *See* Docket Item 7-2 at 6. On June 11, 2019, the Jamaican Embassy issued travel documents to facilitate DHS's removal of Johnson on a flight scheduled for June 27, 2019. *Id.* at 76. But DHS did not use this removal option because of its "forbearance policy" with the Second Circuit. *Id.* at 77, 85.

Although Johnson has caused some of the delay in his removal, this Court does not find that he has "abus[ed] the processes provided to him." *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436). Other than adjourning his removal hearing until August 2018, he has done no more than appeal the IJ's decision to the BIA and then that denial to the Second Circuit. Since then, the BIA and the Second Circuit collectively have taken about 14 months to act on those appeals. In other words, at least since August 2018, Johnson has "simply made use of the statutorily permitted appeals process," *Hechavarria*, 891 F.3d at 56 n.6, and could not have taken any actions to speed up that process. Therefore, the third factor weighs in his favor.

13

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to weigh the merits of Johnson's claims pending before the Second Circuit.

After weighing all these factors, this Court finds that Johnson's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### D. The Process Due to Johnson

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Johnson's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Johnson's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Johnson has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*,

14

533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Johnson has not conceded his deportability, and the resolution of that issue remains pending before the Second Circuit. In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest. Johnson claims that his spouse and child are United States citizens. *See* Docket Item 9 at 14. These family members live not in Jamaica, where the government wishes to send him, but in the United States, where Johnson himself has lived for about nine years. *See* Docket Item 7-2 at 3. Thus, if Johnson chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34; *see also Ms. L. v. U.S. Immigration and Customs Enf't.*, 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018) (finding family separation as part of immigration enforcement likely to violate due process).

This Court recognizes that the government's interest in detaining Johnson also may be strong. The government contends that Johnson's risk of flight and disregard for the law justify his continued detention. Docket Item 7-3 at 77-78, 85, 87. In fact, Johnson is detained under 8 U.S.C. § 1226(c), which applies to aliens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[A]liens detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the

15

statute."[3] *Id.* at 846. Thus, in mandating the detention of criminal aliens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal aliens failed to appear for their removal hearings"[4]). "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Johnson's liberty interests. Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk. *Jennings*, 138 S. Ct. at 846. Now that Johnson's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

---

[3] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[4] The Court noted that this number included aliens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these aliens on bond, it is not clear that *all* of the aliens released were in fact given individualized bond hearings." (emphasis in original)).

16

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally here.

To sustain the prolonged detention of an alien subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[5] This requires consideration of less restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its

---

[5] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

17

goals."). For example, Johnson submits that "he is open to supervised electronic monitoring, as a condition of bond." Docket Item 1 at 7.

Johnson's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require an individualized hearing where the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him. As such, his continued detention violates the Due Process Clause. Johnson must be released unless, no later than **fourteen days from the date of this decision**, the government demonstrates by clear and convincing evidence before a neutral decision maker that Johnson's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community. The decision maker also must consider— and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that would also reasonably address those same regulatory purposes.

## IV. LIMIT ON TRANSFERRING JOHNSON

Johnson also has asked this Court to order the respondents and their "agents not to remove [him] from the jurisdiction of this Court during the duration of the consideration of this petition." Docket Item 1 at 8. The respondents contend that this request is not subject to judicial review. Docket Item 7 at 4-5.

Now that this Court has conditionally granted Johnson's writ, his jurisdictional concerns are not unreasonable. After all, "conditional writs 'would be meaningless' if a

18

habeas court could not determine compliance with them and order sanctions accordingly." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)). But "[it] is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where Johnson is housed, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).

## V.  REQUEST TO STAY REMOVAL

Finally, Johnson has asked this Court to stay his removal pending resolution of his claim before the Second Circuit. Docket Item 1 at 8. The Real ID Act of 2005, 8 U.S.C. § 1252, strips district courts of jurisdiction to review a final order of deportation. *See De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). "[B]ecause district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal." *Al-Garidi v. Holder*, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009). As it lacks jurisdiction, this Court denies Johnson's request to stay his removal.[6]

---

[6] 28 U.S.C. § 1631 permits this Court to transfer Johnson's deportation-related claims to the United States Court of Appeals for the Second Circuit, where jurisdiction may be proper, if the transfer is in the interests of justice. See *De Ping Wang*, 484 F.3d at 617-18. Here, however, doing so is not necessary because Johnson already has moved in the Second Circuit to stay removal. Docket Item 7-2 at 6.

19

## CONCLUSION

For the reasons stated above, Johnson's petition, Docket Item 1, is GRANTED in part. **Within fourteen calendar days of the date of this decision**, the government must release Johnson from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Johnson's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, the decision maker must find that no condition or combination of conditions of release can reasonably ensure Johnson's appearance and the safety of the community—that is, even with conditions, Johnson presents an identified and articulable risk of flight or a threat to an individual or the community.

Johnson's requests to order the respondents not to transfer him out of the territorial jurisdiction of this Court and to stay his removal are DENIED.

SO ORDERED.

Dated: November 14, 2019
Buffalo, New York

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE